Jeffery J. Oven
Daniela E. Pavuk
Crowley Fleck PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
joven@crowleyfleck.com
dpavuk@crowleyfleck.com

Attorneys for Pegasus Emergency
Management Services, LLC and
Elliot Justin, MD

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA, BILLINGS DIVISION

| | |
|---|---|
| PEGASUS EMERGENCY MANAGEMENT SERVICES, LLC, a Delaware limited liability company, and ELLIOT JUSTIN, M.D., <br><br> Plaintiffs, <br><br> vs. <br><br> PEGASUS EMERGENCY GROUP, P.A., a New Jersey corporation, EDWARD SPECTOR, M.D., and NIMISH MEHTA, M.D., <br><br> Defendants. | Cause No.: CV 13-033-RFC-CSO <br><br><br> **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Pegasus Emergency Management Services, LLC ("Pegasus-MT")

and Elliot Justin, M.D., ("Justin") for their Amended Complaint, allege as follows:

## I.   PARTIES

1.    Plaintiff Pegasus-MT is a Delaware limited liability company with its principal place of business 1007 East Main Street, Suite 300, Bozeman, Montana 59715. Pegasus-MT is registered to do business in Montana.

2.    Plaintiff Elliot Justin, M.D., is a resident of Bozeman, Montana.

3.    Upon information and belief, Defendant Pegasus Emergency Group, P.A. ("Pegasus-NJ") is a New Jersey limited liability company with its principal place of business at 2100 Westcott Drive, Flemington, New Jersey 08822.

4.    Upon information and belief, Defendant Edward Spector, M.D., ("Spector") is an individual residing at 22 Badger Drive, Skillman, New Jersey 08558.

5.    Upon information and belief, Defendant Nimish Mehta, M.D., ("Mehta") is an individual residing at 4 Michelle Crossing, Flemington, New Jersey 08822.

6.    Upon information and belief, this Court has personal jurisdiction over Pegasus-NJ by virtue of its contacts with the state of Montana, as described more fully below.  Upon information and belief, this Court has personal jurisdiction over Spector and Mehta on the basis of their business transactions in Montana with Pegasus-MT, including, but not limited to, offers of contracts for investment that originated and were sent to them from Montana.  Drs. Spector and Mehta sent their

investment funds to Montana, and payments from the investments were processed and paid to them from Montana.

## II.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.  This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.    Venue is conferred by 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this district and because Defendants are subject to the personal jurisdiction of this Court.

## III.    GENERAL ALLEGATIONS

### Origin of Pegasus Emergency Group and the PEGASUS mark

9.    Plaintiff Elliot Justin founded Pegasus Emergency Group, P.A. ("Pegasus-NJ") with Richard Lunger, M.D., ("Lunger") in or about April of 1996 to provide practice management services to hospital emergency departments in New Jersey.

10.    Justin came up with the mark "PEGASUS" and developed a winged horse logo for use with the mark PEGASUS EMERGENCY GROUP (with the word "PEGASUS" being dominate) in connection with the provision of emergency medicine services.

11.     Justin orally licensed use of the PEGASUS mark and winged horse logo to Pegasus-NJ.

12.     Pegasus-NJ used the PEGASUS mark and winged horse logo developed by Justin in connection with the provision of emergency medicine services, an example of which is attached hereto as <u>Exhibit A</u> and incorporated herein by this reference.

13.     Justin and Lunger formed Pegasus Emergency Group Putnam, NY, LLC in 2001 in order to provide emergency medicine services to hospital emergency departments in Putnam, New York.

14.     Justin licensed use of the PEGASUS mark and winged horse logo to Pegasus Emergency Group Putnam, NY, LLC.

15.     Pegasus Emergency Group Putnam, NY, LLC has used the PEGASUS mark and winged horse logo beginning in 2001, but has since stopped use of the mark.

16.     Justin formed Pegasus Emergency Group Troy, NY, LLC in 2002 in order to provide emergency medicine services to hospital emergency departments in Troy, New York.

17.     Justin licensed use of the PEGASUS mark and winged horse logo to Pegasus Emergency Group Troy, NY, LLC.

18.     Pegasus Emergency Group Troy, NY, LLC has used the PEGASUS mark and winged horse logo since 2002.

19.     By 2003, Justin had purchased Lunger's interest in both Pegasus Emergency Group Putnam, NY, LLC and Pegasus Emergency Group, Troy, NY, LLC and was the sole owner of these two entities, as well as Pegasus-NJ.

## Ownership Change of Pegasus-NJ

20.     In November 2004, Justin brought several partners into Pegasus-NJ, including David Christiansen, M.D., Kathleen Hickey, M.D., and Defendant Edward Spector, M.D., each of whom executed a Statement of Intent Regarding Stock and Other Issues.

21.     In September 2005, Justin, Christiansen, Hickey, and Spector executed an Amended and Restated Statement of Intent Regarding Stock and Other Issues in order to provide for a procedure for employees to obtain ownership in Pegasus-NJ and to set the conditions for Justin to take a sabbatical, should he chose to do so (the "Amended Agreement").

22.     In October 2005, Justin exercised his right to take a sabbatical from Pegasus-NJ, left the employment of Pegasus-NJ, and transferred his ownership in Pegasus-NJ to the other shareholders, including Defendant Spector.

## Ownership of the PEGASUS Mark

23.     The Amended Agreement does not expressly address the use of the PEGASUS EMERGENCY GROUP mark.

24.     At the time Justin left Pegasus-NJ, Justin and the other shareholders of Pegasus-NJ, including Defendant Spector, reached a verbal agreement and understanding among the parties that Justin would continue owning and using the PEGASUS EMERGENCY GROUP mark and logo in connection with the two Pegasus Emergency Group New York entities formed in 2001 and 2002, as well as in other states where Justin might form additional Pegasus Emergency Group entities.

25.     The understanding was that Pegasus-NJ would continue to have a license to use the PEGASUS EMERGENCY GROUP mark and logo in New Jersey at the Hunterdon Medical Center and in any other sites owned or operated by Spector, Christiansen and/or Hickey and located in New Jersey and that Justin owned the mark for use anywhere outside the State of New Jersey.

26.     In or about 2005, Justin moved to Montana and redesigned the PEGASUS EMERGENCY GROUP mark and logo so that the flying horse appeared to be "taking off" to symbolize growth.

27.     Justin's new PEGASUS mark and logo was adopted by all three of the existing "Pegasus" licensees - the two in New York owned by Justin and Pegasus-

NJ, owned by Spector/Christiansen/Hickey.   An example of Justin's redesigned PEGASUS mark and logo used on business cards by the New York and New Jersey Pegasus licensees is attached hereto as <u>Exhibit B</u> and incorporated herein by this reference.

### Pegasus-MT

28.   On September 29, 2008, Justin formed Pegasus-MT.

29.   Pegasus-MT is owned by Justin as majority owner and Neil Schamban, M.D., ("Schamban") as minority owner.

30.   Pegasus-MT provides practice management services to hospital emergency departments around the country.

31.   Pegasus-MT serves as the primary liaison with hospital leadership and provides direct supervision and management of emergency department operations.

32.   Justin assigned the PEGASUS mark and logo, nunc pro tunc, to Pegasus-MT, a copy of which is attached hereto as <u>Exhibit C</u> and incorporated herein by this reference.

33.   Pegasus-MT uses the PEGASUS EMERGENCY GROUP mark and logo in connection with its services.

34.   Pegasus-MT oversees the operations of individual Pegasus Emergency Groups and currently provides management and staffing to twenty-one (21)

hospitals and two urgent care centers owned by the Pegasus Emergency Groups located in seven states.

35.     The Pegasus Emergency Groups that are managed by Pegasus-MT served over 700,000 patients in 2012 and currently employ approximately 300 physicians and physician assistants.

36.     In 2008, Pegasus-MT formed Pegasus Emergency Group Alabama, LLC ("Pegasus-AL/Cullman") to provide emergency medicine services at Cullman Regional Medical Center in Cullman, Alabama.

37.     Defendants Mehta and Spector (current owners of Pegasus-NJ) are investors in Pegasus-AL/Cullman and continue to receive profit distributions from Pegasus-AL/Cullman.

38.     In 2009, Pegasus-MT formed Pegasus Emergency Group Coosa Valley, LLC ("Pegasus-AL/Coosa Valley") to provide emergency medicine services at Coosa Valley Medical Center in Coosa, Alabama.

39.     Defendants Mehta and Spector (current owners of Pegasus-NJ) are investors in Pegasus-AL/Coosa Valley and continue to receive profit distributions from Pegasus-AL/Coosa Valley.

40.     Also in 2009, Pegasus-MT formed Pegasus Emergency Group Gadsden, LLC ("Pegasus-AL/Gadsden") to provide emergency medicine services at Gadsden Regional Medical Center in Gadsden, Alabama.

41.     Defendants Mehta and Spector (current owners of Pegasus-NJ) are investors in Pegasus-AL/Gadsen and continue to receive profit distributions from Pegasus-AL/Gadsen.

42.     Between 2009 and 2010, Pegasus-MT formed additional Pegasus Emergency Group practices at Andalusia Regional Medical Center in Andalusia, Alabama, Troy Regional Medical Center in Troy, Alabama, and Enterprise Medical Center in Enterprise, Alabama, but terminated its operations at these three sites for various reasons and no longer operates them.

43.     In 2009, Pegasus-MT formed a Pegasus Emergency Group at Moberly Regional Medical Center in Moberly, Missouri.

44.     In 2010, Pegasus-MT obtained a contract with Baptist Health System in Alabama for four hospital sites and began providing services as Pegasus Emergency Group SHA, LLC ("Pegasus-AL/SHA") at those four sites.

45.     Mehta invested in Pegasus-AL/SHA and continues to receive profit share distributions from Pegasus-AL/SHA.

46.     Spector was invited to invest in Pegasus-AL/SHA; however, he declined to do so, but indicated he would be interested in other investment opportunities in the future.

47.     In 2010, Pegasus-MT opened Emergency Department practices in Auburn, New York, consisting of a main Emergency Department and two Urgent

Care Centers, again using the dominate PEGASUS mark.  At the end of the same year, Pegasus-MT opened an Emergency Department practice at the Memorial Hospital for Sweetwater County in Rock Springs, Wyoming also using the PEGASUS mark.

48.   In 2011, Pegasus-MT opened three Emergency Department practices in New Mexico using the PEGASUS mark, including Eastern New Mexico Medical Center in Roswell, New Mexico, Lea Regional Medical Center in Hobbs, New Mexico, and Carlsbad Regional Medical Center in Carlsbad, New Mexico.

49.   In 2012, Pegasus-MT opened two emergency medicine practices in Monroe, Louisiana using the PEGASUS mark, with St Francis Hospital North and Downtown campuses.

50.   Also in 2012, Pegasus-MT opened two more Emergency Department practices in Texas using the PEGASUS mark, including Metroplex Adventist Hospital and Rollinsbrook Community Hospital in Killeen, Texas.

51.   In 2012, Pegasus-MT obtained a contract with Eliza Coffee Memorial Hospital and Shoals Hospital, both in Alabama, and began providing services as Pegasus Emergency Group HOD, LLC ("Pegasus-AL/HOD") at those two sites.

52.   Spector invested in Pegasus-AL/HOD and continues to receive profit share distributions from Pegasus-AL/HOD.

53.     All of the Pegasus-MT Emergency Department sites described above have been featured on the Pegasus-MT website along with Hunterdon and Meadowlands in New Jersey.

54.     Defendants at all times relevant hereto have been aware of the different sites Justin and Pegasus-MT have been operating under the PEGASUS EMERGENCY GROUP mark and logo.   A screenshot showing the various PEGASUS EMERGENCY GROUP entities listed on the Pegasus-MT website is attached hereto as Exhibit D and incorporated herein by this reference.

55.     Between the Cullman Regional Medical Center investment opportunity in 2008 and the Eliza Coffee Memorial Hospital and Shoals Hospital investment opportunity in 2012, Justin either spoke or met with Spector approximately once a month and with Mehta around five to six times per year.   Most of the time, these conversations and meetings were related to the operation and services being provided under the PEGASUS mark.

56.     At no time did either Spector or Mehta state to Justin that they claimed an ownership right in the "Pegasus" name, logo, or trademark, and neither Spector nor Mehta ever disputed Justin's ownership right or the right of Pegasus-MT or the "Pegasus" entities to use the PEGASUS name, logo, or trademark.

57.     When Spector and Mehta invested in Pegasus-AL/Coosa Valley, Pegasus-AL/Gadsden, Pegasus-AL/SHA, and Pegasus-AL/HOD, they received as

part of their invitation to invest the respective LLC Operating Agreements, which

provided, in pertinent part:

**ARTICLE XI.   TRADEMARK LICENSING AND USE OF TRADEMARK**

Pegasus Emergency Management [Services] LLC (PEM) [Pegasus-MT] maintains the ownership rights to and employs the trademark Pegasus Emergency Group, Pegasus Emergency Medicine Group and Pegasus Medicine Group (the Mark) and PEM agrees to grant to the Company a nonexclusive, nontransferable, worldwide and royalty-free license to use the Mark in connection with providing emergency medicine services as set forth in this Operating Agreement, and the Company accepts the license subject to the following terms and conditions:   The Company and all of its shareholders (Licensee) acknowledge the ownership of the Mark by PEM and agree that the Company and/or its shareholders will do nothing inconsistent with such ownership and that use of the Mark by Licensee shall inure to the benefit of and be on behalf of PEM. Licensee agrees that nothing in this Agreement shall give Licensee any right, title or interest in the Mark other than the right to use the Marks in accordance with this Agreement.  Licensee agrees that the nature and quality of all services provided by Licensee under the Mark, and all related advertising, promotional and other related uses of the Mark by Licensee shall be consistent with accepted industry practices.  Licensee agrees to cooperate with PEM in facilitating PEM's control of such nature and quality and to supply PEM with specimens of all uses of the Mark upon request.  Licensee shall comply with all applicable laws and regulations and obtain all appropriate government approvals pertaining to the sale, distribution and advertising of its services under the Mark.  Licensee agrees to notify PEM of any unauthorized use of the Mark by others promptly as it comes to Licensee's attention.  PEM shall have the right, but not the obligation, to bring infringement or unfair competition proceedings involving the Mark.  This Agreement regarding the Mark shall continue in force and effect for perpetuity, unless sooner terminated as provided for herein.  Either PEM or the Company shall have the right to terminate the licensing agreement for use of the Mark upon thirty (30) days' written notice to the other party, for any reason. Upon termination of the licensing agreement for any reason, the

Company and all of the Licensees shall execute the necessary documents and take the necessary steps to cease operating under or using in any way the name Pegasus Emergency Group or using the name Pegasus in referring to the Company or using it as the Company name or identifier.  All present and future members of the Company must agree in writing to these provisions.

58.    At no time did either Spector or Mehta protest or put Justin or Pegasus-MT on notice that the foregoing statement was not correct or that they disagreed with its contents.

59.    In 2009, Justin and the marketing and information technology staff at Pegasus-MT redesigned the Pegasus-MT website for Pegasus-MT and the other "Pegasus" entities that Justin and Pegasus-MT were operating outside of New Jersey.

60.    At that time, Justin spoke with Spector and Mehta and offered them the opportunity to include Pegasus-NJ's contact information and other information regarding performance and accomplishments on the Pegasus-MT website.

61.    Spector and Mehta both accepted this offer and allowed Pegasus-MT to post such information on the Pegasus-MT website.  In addition the defendants provided to Pegasus-MT information regarding certain performance parameters (such as "LWOBS" or number of patients left without being seen) length of stay, admissions and other performance parameters of Pegasus-NJ, which allowed Pegasus-MT to monitor the quality of the services performed by Pegasus-NJ under the PEGASUS EMERGENCY GROUP mark.

62.     Not only did Pegasus-NJ allow Pegasus-MT to post its performance and contact information on the Pegasus-MT website, but shortly after Pegasus-NJ opened operations in 2010 at the Meadowlands Hospital Medical Center in Secaucus, New Jersey, that site was added to the Pegasus-MT website as well.

63.     The "Pegasus" sites that were owned and operated by Justin and Pegasus-MT were featured on the Pegasus-MT website, owned and operated by Pegasus-MT, together with two Pegasus-NJ sites (Hunterdon and Meadowlands) for over two years with the full knowledge, permission and agreement of Spector as a senior owner and partner in Pegasus-NJ.

64.     Until late January 2013, Pegasus-MT was continuously providing valuable services to Pegasus-NJ for its Hunterdon and Meadowlands sites, which included taking and routing calls from patients who had inquiries regarding their bills or other questions or concerns regarding patient services at the Pegasus-NJ Emergency Departments at Hunterdon and Meadowlands in New Jersey.

65.     Spector and his assistant regularly contacted Brian Sweeney, the Director of Information Technology for Pegasus-MT, to update the performance statistics on the website and other matters pertaining to the Pegasus-NJ Hunterdon and Meadowlands sites.

66.     Other staff members of Pegasus-MT handled and routed calls from patients and clients of the Pegasus-NJ Hunterdon and Meadowlands sites.

## **Pegasus-NJ files Federal Trademark Application**

67.     On June 2, 2010, unbeknownst to Justin, Pegasus-NJ filed a federal trademark application for the mark PEGASUS EMERGENCY GROUP for use in connection with "emergency medical assistance; emergency medical response services."

68.     This registration was granted on January 11, 2011.

69.     Justin first learned of this registration in January 2013.

70.     On or about January 13, 2013, Justin met with Spector in New York, New York, regarding a desire to formalize the verbal agreement between Justin and Pegasus-NJ concerning the PEGASUS EMERGENCY GROUP mark and logo.

71.     Justin was in the process of selling a majority share of Pegasus-MT to a strategic partner and wanted to ensure that the verbal agreement that had been in place (and that the parties had been honoring) for seven and a half years was memorialized in writing.

72.     During this meeting, Spector acknowledged that the parties had an oral agreement regarding use of the PEGASUS EMERGENCY GROUP mark and logo in connection with emergency medicine services.

73.     Spector stated a desire to speak with his partners and legal counsel and get back to Justin.

74.    Instead of further conversation, on or about January 27, 2013, Pegasus-MT received a request to remove any references to Hunterdon and Meadowlands from the Pegasus-MT website.

75.    Pegasus-MT immediately complied with this request.

76.    Pegasus-MT's ownership and use of the PEGASUS EMERGENCY GROUP mark and logo since its inception was with the full knowledge and acquiescence of Pegasus-NJ, Spector and Mehta, and their respective partners, without any protest, warning, or objection.

## IV.  CAUSES OF ACTION
## COUNT I
### (Declaratory Judgment)

77.    Plaintiff realleges and incorporates by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

78.    On or about February 8, 2013, counsel for Pegasus-NJ indicated to counsel for Pegasus-MT that Pegasus-NJ claimed ownership in the PEGASUS EMERGENCY GROUP mark and logo and that it would be demanding $2 million from Pegasus-MT for a license to continue use of the PEGASUS EMERGENCY GROUP mark for existing sites only.  Counsel for Pegasus-NJ stated that additional licensing fees would be required for future uses PEGASUS EMERGENCY GROUP mark at additional sites, the amount of which was to be determined based on a valuation commissioned from a brand valuation professional.

79.     On March 7, 2013, counsel for Pegasus-NJ communicated to Pegasus-MT that in consideration of $4,000,000 lump sum payment by Pegasus-MT, Pegasus-NJ would enter into a perpetual royalty free transferrable license for the use of the PEGASUS trademark for all of the existing Pegasus-MT facilities as well as any and all future facilities which may be opened anywhere in the United States, except in New Jersey and a 30 mile radius of New Jersey.

80.     An actual controversy exists regarding the parties' respective rights in the PEGASUS EMERGENCY GROUP mark and logo.

81.     Pegasus-MT is the rightful owner by assignment from Justin of all right, title, and interest in the PEGASUS EMERGENCY GROUP mark and logo and all goodwill associated with the PEGASUS EMERGENCY GROUP mark and logo since its date of first use in 1996.

82.     The actions of Defendants have caused Plaintiffs to have a real and reasonable apprehension of litigation instituted by Defendants to recover alleged damages in excess of $4 million.

83.     As a direct and proximate cause of Defendants' actions, Plaintiffs have and will continue to suffer damages.

84.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Pegasus-MT respectfully requests the Court to declare that Pegasus-MT is the rightful owner of all right, title, and interest in the PEGASUS EMERGENCY GROUP mark and logo and all

goodwill associated with the PEGASUS EMERGENCY GROUP mark and logo since its date of first use in 1996.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

85.     Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

86.     In every contract, including Justin's oral license of the PEGASUS EMERGENCY GROUP mark to Pegasus-NJ, there is an implied obligation of good faith and fair dealing on the part of both parties.

87.     This obligation of good faith and fair dealing requires that neither party do anything unreasonable that deprives the other of the benefits of the contract.

88.     Defendants had a duty to deal in good faith with Plaintiffs and abide by the terms of the oral license of the PEGASUS EMERGENCY GROUP mark that Justin granted Pegasus-NJ.

89.     Defendants breached their duty of good faith and fair dealing by denying Justin and Pegasus-MT's ownership of the PEGASUS EMERGENCY GROUP mark, by registering the mark with the USPTO, by attempting to collect royalties for Pegasus-MT's use of the mark.

90.     Justin and Pegasus-MT have suffered damages as a result of Defendants' breach of the implied duty of good faith and fair dealing.

## COUNT III
### (Transfer of Trademark Registration)

91.     Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

92.     On January 11, 2011, Pegasus-NJ obtained a federal registration for the mark PEGASUS EMERGENCY GROUP from the United States Patent and Trademark Office (Reg. No. 3,904,309) for use in connection with emergency medical assistance and emergency medical response services.

93.     Pegasus-NJ claimed to have first used the mark PEGASUS EMERGENCY GROUP in connection with emergency medical assistance and emergency medical response services in commerce in April 1996.

94.     Pegasus-NJ is not the rightful owner of the federal registration or the mark PEGASUS EMERGENCY GROUP used in connection with emergency medical assistance and emergency medical response services, or the goodwill associated with the mark and registration.

95.     Plaintiff Justin, via his licensee company, not Defendant Pegasus-NJ, first used the mark PEGASUS EMERGENCY GROUP in connection with emergency medicine services beginning in April 1996.

96.     Plaintiff Justin, and/or its assignee Pegasus-MT, have continuously used the mark PEGASUS EMERGENCY GROUP in connection with emergency medicine services since April 1996.

97.     Defendants' use of the mark PEGASUS EMERGENCY GROUP in connection with emergency medicine services since Defendants first used the mark in commerce was through license from Plaintiff Justin and such use inured to the benefit of Plaintiffs.

98.     Allowing Pegasus-NJ to keep Trademark Registration No. 3,904,309 will likely cause confusion in the minds of consumers as to the source of services provided under the PEGASUS mark.

99.     Pegasus-MT is entitled to a transfer of Trademark Registration No. 3,904,309 from Pegasus-NJ to Plaintiff-MT.

100.    Pegasus-MT respectfully requests the Court to issue an Order directing the Director of Patents and Trademarks to transfer Trademark Registration No. 3,904,309 from Pegasus-NJ to Plaintiff-MT.

### COUNT IV (In The Alternative to Count III)
### (Cancellation of Trademark Registration)

101.    Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

102.    On January 11, 2011, Pegasus-NJ obtained a federal registration for the mark PEGASUS EMERGENCY GROUP from the United States Patent and Trademark Office (Reg. No. 3,904,309) for use in connection with emergency medical assistance and emergency medical response services.

103.   Pegasus-NJ filed its application that became Trademark Registration No. 3,904,309 on June 2, 2010.

104.   Pegasus-NJ used counsel Eric Melzer of the firm Greenbaum, Rowe, Smith & Davis LLP to prepare and file the application that became Trademark Registration No. 3,904,309.

105.   On June 2, 2010, counsel for Pagasus-NJ, Eric Melzer, signed a Declaration and submitted his Declaration to the United States Patent and Trademark Office, in which he declared under oath that (1) he was properly authorized to execute on behalf of Pegasus-NJ the application that became Trademark Registration No. 3,904,309, (2) he believed Pegasus-NJ to be the owner of the mark PEGASUS EMERGENCY GROUP, (3) to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use the PEGASUS EMERGENCY GROUP mark in commerce, and (4) that all statements made in the application were true.

106.   At the time Melzer signed his Declaration and submitted it to the United States Patent and Trademark Office with the application that became Trademark Registration No. 3,904,309, on June 2, 2010, Defendant Pegasus-NJ and its principals, including Defendants Spector and Mehta, knew Melzer's Declaration was false because Defendants knew that Plaintiffs had the right to use, and were in fact using, the PEGASUS mark in commerce in connection with the exact same

services listed in the application that became Trademark Registration No. 3,904,309.

107.   Defendants knew Plaintiffs had the right to use, and were in fact using, the PEGASUS mark in commerce in connection with the exact same services listed in the application that became Trademark Registration No. 3,904,309 because Defendants were and are currently investors in certain PEGASUS EMERGENCY GROUP entities operated by Pegasus-MT, namely Pegasus-AL/Cullman, Pegasus-AL/Coosa Valley, Pegasus-AL/Gadsen, Pegasus-AL/SHA, and Pegasus-AL/HOD.

108.   As part of Defendants' investment in the various PEGASUS EMERGENCY GROUP entities operated by Pegasus-MT, Defendants received operating agreements for various PEGASUS EMERGENCY GROUP entities, each of which stated:

### ARTICLE XI.   TRADEMARK LICENSING AND USE OF TRADEMARK

Pegasus Emergency Management [Services] LLC (PEM) [Pegasus-MT] maintains the ownership rights to and employs the trademark Pegasus Emergency Group, Pegasus Emergency Medicine Group and Pegasus Medicine Group (the Mark) and PEM agrees to grant to the Company a nonexclusive, nontransferable, worldwide and royalty-free license to use the Mark in connection with providing emergency medicine services as set forth in this Operating Agreement, and the Company accepts the license subject to the following terms and conditions:   The Company and all of its shareholders (Licensee) acknowledge the ownership of the Mark by PEM and agree that the Company and/or its shareholders will do nothing inconsistent with such ownership and that use of the Mark by Licensee shall inure to the benefit of and be on behalf of PEM.

Licensee agrees that nothing in this Agreement shall give Licensee any right, title or interest in the Mark other than the right to use the Marks in accordance with this Agreement.  Licensee agrees that the nature and quality of all services provided by Licensee under the Mark, and all related advertising, promotional and other related uses of the Mark by Licensee shall be consistent with accepted industry practices.  Licensee agrees to cooperate with PEM in facilitating PEM's control of such nature and quality and to supply PEM with specimens of all uses of the Mark upon request.  Licensee shall comply with all applicable laws and regulations and obtain all appropriate government approvals pertaining to the sale, distribution and advertising of its services under the Mark.  Licensee agrees to notify PEM of any unauthorized use of the Mark by others promptly as it comes to Licensee's attention.  PEM shall have the right, but not the obligation, to bring infringement or unfair competition proceedings involving the Mark.  This Agreement regarding the Mark shall continue in force and effect for perpetuity, unless sooner terminated as provided for herein.  Either PEM or the Company shall have the right to terminate the licensing agreement for use of the Mark upon thirty (30) days' written notice to the other party, for any reason.  Upon termination of the licensing agreement for any reason, the Company and all of the Licensees shall execute the necessary documents and take the necessary steps to cease operating under or using in any way the name Pegasus Emergency Group or using the name Pegasus in referring to the Company or using it as the Company name or identifier.  All present and future members of the Company must agree in writing to these provisions.

109.   Defendants' conduct in allowing Pegasus-NJ's attorney to sign and submit a false Declaration to the United States Patent and Trademark Office in order to procure Trademark Registration No. 3,904,309 constitutes inequitable conduct and fraud on the United States Patent and Trademark Office.

110.    Pursuant to 15 U.S.C. §§ 1064 and 1067, Plaintiffs respectfully request the Court to issue an Order directing the Director of Patents and Trademarks to cancel Trademark Registration No. 3,904,309.

## COUNT V (In the Alternative to Count I)
## (Declaratory Judgment)

111.    Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

112.    Pegasus-NJ, through its owners, granted Justin and Pegasus-MT a royalty free, perpetual license to use the mark PEGASUS EMERGENCY GROUP outside the state of New Jersey in connection with emergency medicine services and related services.

113.    Justin and Pegasus-MT's have reasonably relied on this oral license and invested substantial time and resources into promoting the PEGASUS EMERGENCY GROUP mark and building value in the mark and goodwill associated with the mark.

114.    Pegasus-NJ's association with Justin and Pegasus-MT is close enough such that Pegasus-NJ reasonably relied on the quality control measures exerted by Justin and Pegasus-MT in connection with the use of the PEGASUS EMERGENCY GROUP mark such that the oral license granted to Justin and Pegasus-MT is not a naked license.

115.   Justin and Pegasus-MT have at all times acted in good faith with respect to their use of the PEGASUS EMERGENCY GROUP mark.

116.   Justin and Pegasus-MT have reasonably relied on Pegasus-NJ's knowledge of and lack of objection to Justin and Pegasus-MT's use of the PEGASUS EMERGENCY GROUP mark for as long as Justin and Pegasus-MT have used the mark outside of New Jersey.

117.   Pegasus-NJ and/or its principals have engaged in conduct that affirmatively encouraged Justin and/or Pegasus-MT to use the PEGASUS EMERGENCY GROUP mark.

118.   Pegasus-NJ should be estopped from denying the existence of the perpetual, royalty free oral license of the PEGASUS EMERGENCY GROUP mark to Justin and Pegasus-MT for use outside of New Jersey or from asserting any trademark infringement claims against Pegasus-MT.

119.   On or about February 8, 2013, counsel for Pegasus-NJ indicated to counsel for Pegasus-MT that Pegasus-NJ claimed ownership in the PEGASUS EMERGENCY GROUP mark and logo and that it would be demanding $2 million from Pegasus-MT  for a license to continue use of the PEGASUS EMERGENCY GROUP mark for existing sites only.  Counsel for Pegasus-NJ stated that additional licensing fees would be required for future uses PEGASUS EMERGENCY

GROUP mark at additional sites, the amount of which was to be determined based on a valuation commissioned from a brand valuation professional.

120.    On March 7, 2013, counsel for Pegasus-NJ communicated to Pegasus-MT that in consideration of $4,000,000 lump sum payment by Pegasus-MT, Pegasus-NJ would enter into a perpetual royalty free transferrable license for the use of the PEGASUS trademark for all of the existing Pegasus-MT facilities as well as any and all future facilities which may be opened anywhere in the United States, except in New Jersey and a 30 mile radius of New Jersey.

121.    An actual controversy exists regarding the parties' respective rights in the PEGASUS EMERGENCY GROUP mark and logo.

122.    The actions of Defendants have caused Plaintiffs to have a real and reasonable apprehension of litigation instituted by Defendants to recover alleged damages in excess of $4 million.

123.    As a direct and proximate cause of Defendant's actions, Plaintiffs have and will continue to suffer damages.

124.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Pegasus-MT respectfully requests the Court to declare that Pegasus-NJ granted Justin and Pegasus-MT a perpetual, royalty free license to use the PEGASUS EMERGENCY GROUP mark and logo outside the state of New Jersey in connection with emergency medicine services and related services.

**COUNT VI (In the Alternative to Count I)**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

125.   Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

126.   In every contract, including Pegasus-NJ's perpetual, royalty free oral license of the PEGASUS EMERGENCY GROUP mark to Justin and Pegasus-MT for use outside of New Jersey, there is an implied obligation of good faith and fair dealing on the part of both parties.

127.   This obligation of good faith and fair dealing requires that neither party do anything unreasonable that deprives the other of the benefits of the contract.

128.   Defendants had a duty to deal in good faith with Plaintiffs and abide by the terms of the oral license of the PEGASUS EMERGENCY GROUP mark to Justin and Pegasus-MT.

129.   Defendants breached their duty of good faith and fair dealing by improperly attempting to terminate, without cause, the perpetual, royalty free license granted to Justin and Pegasus-MT and by improperly demanding royalties from Justin and Pegasus-MT for their use of the mark.

130.   Justin and Pegasus-MT have suffered damages as a result of Defendants' breach of the implied duty of good faith and fair dealing and Defendants have received unfair advantage and value that they would not have otherwise received.

## COUNT VII (In the Alternative to Count I)
## (Breach of Contract)

131.    Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

132.    Plaintiffs and Defendants had a verbal agreement whereby Pegasus-NJ granted Plaintiffs the perpetual, royalty free right to use the PEGASUS EMERGENCY GROUP mark and logo in commerce in all states except for New Jersey.

133.    Defendants breached the verbal agreement by improperly attempting to terminate, without cause, the perpetual, royalty free license granted to Justin and Pegasus-MT and by improperly demanding royalties from Justin and Pegasus-MT for their use of the mark.

134.    As a result of Defendants' breach of contract, Plaintiffs have incurred damages in an amount to be determined at trial, and Defendants have received unfair advantage and value that they would not have otherwise received.

## COUNT VIII
## (Fraud)

135.    Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

136.    Defendants Pegasus-NJ and its principals, including Edward Spector, M.D. and Nimish Mehta, M.D., have committed fraud against Plaintiffs Pegasus-

MT and Elliot Justin, M.D., by engaging in conduct that reasonably caused Plaintiffs to believe they had a verbal agreement and/or an implied license to use the PEGASUS EMERGENCY GROUP mark.

137.   Defendants have committed fraud on Plaintiffs either by knowingly making a false representation of material fact, or when Defendants made that representation they were ignorant of whether the representation was true.

138.   Defendants made the representation with the intention that Plaintiffs rely on the representation.

139.   Plaintiffs were ignorant of the falsity of the representation and had a reasonable right to rely and actually did rely on the representation and are damaged by their reasonable reliance on that representation.

140.   Pegasus-MT reasonably relied on the conduct of Pegasus-NJ and its principals in using the PEGASUS EMERGENCY GROUP mark and in making significant financial investments and investments of other resources in promoting and building the PEGASUS EMERGENCY GROUP brand over a number of years and developing it into a nationally recognized brand.

141.   Plaintiffs would not have promoted and developed Pegasus into a nationally recognized mark of quality in Emergency Medicine services if they had known that Defendants would seek to assert ownership of it without notice to Plaintiffs and try to sell it back to Plaintiffs once Plaintiffs imbued it with

significant value. Instead, Plaintiffs would have developed a different name and brand in Emergency Medicine in interstate commerce.

142.    Plaintiffs have been damaged as a result of Defendants' fraudulent conduct.

## COUNT IX
### (Constructive Fraud)

143.    Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

144.    In every contract there is an implied obligation of good faith and fair dealing on the part of both parties which requires that neither party do anything unreasonable which deprives the other of the benefits of the contract.

145.    Constructive fraud consists of:  (1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or the prejudice of anyone claiming under that person; or (2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.  Mont. Code Ann. § 28-2-406.

146.    Defendants had the duty to deal in good faith with Plaintiffs and abide by their verbal agreement with Plaintiffs on the use of the trademark as set forth herein.

147.    Defendants breached their duty of good faith dealing in contract and breached their verbal agreement with Justin and Pegasus-MT and thereby misled the Plaintiffs to their detriment, resulting in Defendants receiving unfair advantage and value which they would not have otherwise gotten.

148.    If the parties had not had a verbal agreement allowing Plaintiffs to use the Pegasus name and brand, Plaintiffs would not have promoted and developed Pegasus into a nationally recognized mark of quality in Emergency Medicine services. Instead, Plaintiffs would have developed a different name and brand in Emergency Medicine in interstate commerce.

149.    Plaintiffs have been damaged as a result of Defendants' fraudulent conduct.

## COUNT X
### (Negligent Misrepresentation)

150.    Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

151.    Defendants made a representation of a material fact to Plaintiffs that they would abide by their agreement with Plaintiffs on the use of the trademark as set forth herein.

152.    Defendants' representation was untrue and they made the representation without any reasonable ground for believing it to be true.

153.   Defendants made the representation with the intent to have Plaintiffs rely on it.

154.   Plaintiffs were unaware of the falsity of the representation and were justified in relying on it.

155.   As a result of their reliance on the untrue representation, Plaintiffs sustained damage and losses.

## COUNT XI
### (Unjust Enrichment)

156.   Plaintiffs reallege and incorporate by reference the allegations set forth in all previous paragraphs set forth above, as if fully set forth herein.

157.   In the event that it is determined that there was no valid contract between Plaintiffs and Defendants, then Plaintiffs' use and development of the PEGASUS mark and brand in commerce in all states except for New Jersey, over the past seven years has imbued the PEGASUS mark with value and competitive advantage which has been conferred by Plaintiffs upon Defendants, which the Defendants would not have otherwise gotten.

158.   This value was not intended as a gift from Plaintiffs to Defendants and is not legally justifiable without conferring fair compensation from Defendants to Plaintiffs.

159.    The fair compensation and value is demonstrated by the amount of the demand that Defendants are making for the purchase of the Pegasus trademark rights by Plaintiffs from Pegasus-NJ.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment and Order in their favor against Defendants:

A.    Declaring that Pegasus-MT is the rightful owner of all right, title, and interest in the PEGASUS EMERGENCY GROUP mark and logo and all goodwill associated with the PEGASUS EMERGENCY GROUP mark and logo since its date of first use in 1996;

B.    Finding that Defendants breached the implied duty of good faith and fair dealing and awarding Plaintiffs their damages suffered;

C.    Finding that Defendants committed fraud or constructive fraud and awarding Plaintiffs their damages suffered;

D.    Finding that Defendants negligently misrepresented material facts to Plaintiffs and awarding Plaintiffs their damages suffered;

E.    Finding that Defendants were unjustly enriched at Plaintiffs' expense and awarding Plaintiffs the amount of Defendants' unjust enrichment;

F.    Directing the Director of Patents and Trademarks to transfer Trademark Registration No. 3,904,309 from Pegasus-NJ to Plaintiff-MT;

G.     In the alternative to transferring Trademark Registration No. 3,904,309 from Pegasus-NJ to Plaintiff-MT, directing the Director of Patents and Trademarks to cancel Trademark Registration No. 3,904,309;

H.     In the alternative to paragraph A above, declaring that Pegasus-NJ granted Justin and Pegasus-MT a perpetual, royalty free license to use the PEGASUS EMERGENCY GROUP mark and logo outside the state of New Jersey in connection with emergency medicine services and related services;

I.     In the alternative to paragraph A above, Finding that Defendants breached the implied duty of good faith and fair dealing and awarding Plaintiffs their damages suffered;

J.     In the alternative to paragraph A above, Finding that Defendants breached their agreement with Plaintiffs and awarding Plaintiffs their damages suffered;

K.     Awarding Plaintiffs the reasonable costs and expenses of this action;

L.     Awarding Plaintiffs their attorney fees as permitted by law, contract or in equity; and

M.     Awarding Plaintiffs any further additional relief as the Court may deem just, proper and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all claims.

Dated this 3rd day of April 2013.

 /s/   Daniela E. Pavuk   
JEFFERY J. OVEN
DANIELA E. PAVUK
Crowley Fleck PLLP
P. O. Box 2529
Billings, MT  59103-2529

Attorneys for Pegasus Emergency
Management Services, LLC and
Elliot Justin, MD